Shetzline *v.* C. & M. Prod. Co., Inc., Appellant.

Argued October 17, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Charles F. Phillips,* for appellant.

*Gabriel D. Weiss,* and with him *Simon Pearl,* for appellee.

Opinion by Baldrige, J., January 30, 1931:

The plaintiff brought this action in assumpsit by issuing a writ of foreign attachment, to which the defendant entered an appearance. The case was tried by

Judge GLASS of the municipal court, without a jury, and a finding was made for the plaintiff in the sum of $980.71. Motions for judgment n. o. v. and for a new trial were refused, and thereupon this appeal was taken.

The plaintiff's action was founded on a written contract, a portion of which is as follows:

"City, *Philadelphia.* Date, *February 5, 1929.* Sold to, *S. R. Shetzline, 212 Dock Street, Philadelphia, Pa.* Ship to, *S. R. Shetzline, Philadelphia, Pa.*, Destination. Railroad Delivery Preferred, Positive Routing, *P. R. R. del. Produce Terminal.* Sold for account of *C. & M. Product Co., Carrizo Springs, Texas.* Shipment from, *Texas.* Time of Shipment *2 cars 2/5/29 and car daily balance week.* Car No. and Initial, *Later.* Sale made (F. O. B. or Delivered) *F. O. B.* Terms, How Payable, *On receipt of number & amount, Invoice each car Buyer wiring money Shipper. 6 cars C. & M. Brand Savory Spinach @ $.37½ per bu. F. O. B.*

(The italics are in writing—the other portion printed.)

Signed, Samuel R. Shetzline, Buyer.

C. & M. Produce Co., Seller.

By Wigton-Corbin Company,
Broker or Salesman."

This suit was brought to recover 20 cents per bushel —the excess express rate over the freight rate on the one car, aggregating $180, and a loss of $745.20— the alleged difference between the market value of the two carloads of spinach not shipped at the time, and to the place, they should have been delivered, and the price at which the defendant had agreed to sell and deliver them to the plaintiff.

The defendant contends (1) that it had the right to make shipment by express, and (2) that the measure of damages adopted by the court for the failure to ship the two cars was erroneous.

Under paragraph 8 of the plaintiff's statement,

which was offered and received in evidence, the delivery of the first two cars was made on or about February 5, 1929, and of the third car on February 6th. Each of these deliveries was made to the plaintiff by *freight* and paid for by him at the price agreed upon. No further cars were shipped until the 15th of February, when one carload of 900 bushels of spinach was forwarded to him by express. Notice, however, was not given to the plaintiff of the defendant's failure to make shipment, as required by clause 19 of the contract, which is as follows: "Where......it is impossible for reasons beyond the control of the seller to make shipment or delivery as agreed, the seller shall immediately advise the buyer by wire, stating the causes thereof and the earliest possible specific or approximate date on which shipment or delivery can be made, and the buyer thereupon shall immediately advise the seller by wire as to whether or not he still desires to have his order filled. This paragraph is not intended to deprive the buyer of any right to damages which he may have."

On the 16th of February, 1929, the plaintiff telegraphed to the defendant that he would accept the car shipped by express, provided the defendant would pay the difference between the express and freight rates, as per agreement. The record does not disclose whether an answer was received to that message, but the plaintiff paid the express thereon at the rate of 62½ cents per bushel. It could be properly assumed that this shipment was an undertaking to make delivery under the contract, and subject to its terms and conditions.

It is contended upon the part of the defendant that the plaintiff did not fill in the blank space after "Railroad Delivery Preferred" and that it had the option, therefore, to make shipment either by express or freight; that if it had been confined to make shipment by freight only, the word "Preferred" would have

been stricken from the contract, or the space following it would have been filled in with the names or the initials of railroads over which delivery was to be made. We do not agree with that contention. The contract clearly shows that a certain railroad could be preferred, but, notwithstanding, the shipper had the option to ship on another road than that designated. "Positive Routing" directions were, however, given and the shipper was required to abide thereby.

Furthermore, in the sixth and seventh paragraphs of the plaintiff's statement, it is averred that there is a usage and custom among growers and shippers of vegetables that where produce is to be shipped by the grower f. o. b. by railroad, shipment is to be made in all cases by regular freight delivery at the usual freight charges; that that is a continuous, uniform, notorious and reasonable custom which has prevailed for more than five years, and which was known by the defendant. These averments, while offered in evidence, the court held, and properly so, were insufficiently denied. We find no difficulty in concluding that there was sufficient evidence to justify the finding of the trial judge that all the spinach was to have been shipped by freight, and, therefore, the defendant was liable for the difference in express and freight charges.

Whether the plaintiff showed the proper measure of damages is a more serious question. The contract calls for shipment from Texas. The portion thereof which reads "Sale made (F. O. B. or Delivered)" stipulates in writing that the sale was made f. o. b., that is, it was free on board cars at place of shipment (Texas).

The general, legal rule is, that upon sale f. o. b. at point of shipment, title passes from the seller the moment there is a delivery to the carrier. See Sales Act of May 19, 1915, P. L. 543 (562), Sect. 67: "(3) Where there is an available market for the goods in

question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver:'' Mindlin v. Saxony Spinning Co., 261 Pa. 354; Seward v. Penna. Salt Mfg. Co., 266 Pa. 457; Delmont Gas Coal Co. v. Diamond Alkali Co., 275 Pa. 535. The operation of this rule yields, however, if a contrary intention is manifested. Do facts in this case come under the general principle, or is there sufficient evidence to subordinate the rule? The plaintiff contends that as the produce was to be shipped to Philadelphia, that is where the title passed. True, Philadelphia was the destination of shipment, but it does not follow that it was the place of delivery.

Our attention is called to 23 R. C. L. 1338, Sect. 161, and 24 R. C. L. 45, Sect. 308, which state that if the sale is made f. o. b. at point of *destination,* the title does not pass until that point is reached, but these parties did not thus stipulate. The contract states f. o. b. only, nothing is said about ''point of destination.'' It is averred by the plaintiff that on the 5th and 6th of February, three cars were delivered to him ''under said agreement.'' Where was that delivery? Of course, the cars could not have arrived in Philadelphia the same day they were shipped from Texas and it is not averred that they were delivered on those days in Philadelphia. The remaining cars were to be delivered ''daily balance week.'' It reasonably follows that the title to the produce sold was to pass in Texas. To our minds, the contract so says, and the conduct of the parties shows that they so interpreted it.

That brings us to the question, if delivery was to be had in Texas, was the testimony of the plaintiff giving the price of spinach in Philadelphia on the 8th, 9th,

10th, 14th and 15th of February sufficient to prove the price at the time and place of delivery? No information was given as to the length of time it takes freight to come from Texas to Philadelphia and we cannot indulge in conjecture on that point; that important feature of plaintiff's case should have been developed. We find no testimony to support an inadvertent statement in the opinion of the court that the market price of spinach was the same at the time of delivery in Texas as in Philadelphia except for the difference in the freight rate.

As the proper measure of damages was at the time when delivery in Texas was to have been made, and that was not shown, we are constrained to hold that there was no basis for assessment of damages for the two cars not shipped.

Judgment is reversed and a new trial ordered.