822 A.2d 676

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**GILMOUR MANUFACTURING COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued April 30, 2001.

Decided April 25, 2003.

Carol L. Weitzel, Calvin Royer Koons, Harrisburg, for the Commonwealth of PA.

Joseph C. Bright, Philadelphia, Kevin Jon Moody, Harrisburg, for Gilmour Manufacturing Company.

Christopher Zettlemoyer, for Amicus–PA Chamber of Business & Industry.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

Justice CASTILLE.

This appeal presents a tax issue of first impression for this Court: whether a Pennsylvania corporation's sales of goods to out-of-state purchasers, who retrieve the goods at the seller's place of business in Pennsylvania and then transport the goods outside of Pennsylvania, should be included in the Pennsylvania corporation's calculation of corporate net income ("CNI") tax under the Tax Reform Code of 1971, 72 P.S. § 7101 *et seq.* For the reasons that follow, we agree with the Commonwealth Court that the Pennsylvania Department of Revenue's regulation, which treats such sales as in-state sales, is contrary to the Code and, accordingly, we affirm.

This matter proceeded in Commonwealth Court based upon a stipulation of facts pursuant to Appellate Rule 1571(f). The stipulation constituted the entire record of the proceeding and thus the relevant facts are undisputed. Appellee, Gilmour Manufacturing Company, a Pennsylvania corporation, manufactures lawn and garden products at a facility in Somerset County, Pennsylvania. The parties agree that the products constitute tangible personal property. Gilmour sells its goods throughout the United States, most often shipping them to out-of-state purchasers through common carriers and paying the freight charges for the shipping. Some of Gilmour's out-of-state customers, however, prefer to retrieve the products themselves at Gilmour's Pennsylvania loading dock. Gilmour refers to these customer pick-up transactions as "dock sales," for which Gilmour provides a freight allowance to its customers. Gilmour generally knows the destination to which its out-of-state "dock sale" customers transport the products. The proper tax treatment of Gilmour's "dock sales" income is the issue before this Court.

By way of background, Section 401 of the Tax Reform Code permits a company that does not transact all of its business within the Commonwealth, such as Gilmour, to apportion its tax liability based upon the ratio of the company's business transacted in the Commonwealth to its total business. 72 P.S. § 7401. The apportionment formula is an arithmetic average of three factors, *i.e.*, property, payroll and sales factors. As to each factor, the numerator represents business conducted within Pennsylvania and the denominator represents business conducted everywhere else. The property and payroll factors are not in dispute on this appeal; it is the sales factor, and more particularly the numerator of that factor (*i.e.*, sales conducted in Pennsylvania), which is at issue.

In 1991, the year pertinent to this appeal, Gilmour was entitled to apportionment for purposes of its CNI tax because some of its sales took place within Pennsylvania while others took place outside of Pennsylvania. In its 1991 CNI tax report, Gilmour excluded its "dock sales" to out-of-state purchasers from its calculation of the numerator of its sales factor, considering those sales to be out-of-state. The Department of Revenue, however, disagreed with Gilmour's calculations. Consistently with its interpretation of the relevant existing regulation, the Department recalculated Gilmour's taxes to include as sales in Pennsylvania dock sales where out-of-state purchasers retrieved the goods themselves.[1] Gilmour's out-of-state dock sales for 1991 totaled $2,385,362. Inclusion of the sales as Pennsylvania sales resulted in a $17,912 increase in the tax due.

Gilmour paid the increased tax but then petitioned for a refund. The Board of Finance and Revenue denied the petition. Gilmour then petitioned for review of the Board's decision in the Commonwealth Court, claiming that the Department's regulation was inconsistent with the Tax Reform Code.

1. The Department's regulation states, as the "general rule," that: "Sales of tangible personal property are in the state in which delivery to a purchaser occurs." 61 Pa.Code § 153.26(b)(2). Since the out-of-state purchaser takes delivery in Pennsylvania when a "dock sale" is consummated, the Department treats those sales as Pennsylvania sales.

The issue in the Commonwealth Court was the proper construction of Section 401(3)2(a)(16) of the Code, which provides as follows:

> Sales of tangible personal property are in this State if the property is delivered or shipped to a purchaser, within this State regardless of the f.o.b. point or other conditions of the sale.

72 P.S. § 7401(3)2(a)(16).[2] The dispute centered on the meaning of the phrase "within this State." Gilmour essentially argued that the statute set forth a "destination" rule, while the Commonwealth maintained that the statute set forth a "delivery" rule. Under Gilmour's reading, the phrase "within this state" modifies the immediately preceding word "purchaser" as to goods either "delivered" or "shipped." Thus, a dock sale would be deemed in this state only if the purchaser was a Pennsylvania-based purchaser. Gilmour argued that goods purchased by out-of-state-based buyers and destined for out-of-state locations are out-of-state sales for purposes of the CNI tax, irrespective of whether the goods were delivered to the buyer in Pennsylvania. The Commonwealth, on the other hand, argued that the phrase "within this state" modified the word "delivered." Under this construction, a dock sale would be deemed to have occurred within Pennsylvania if the purchaser actually took delivery here, irrespective of the home state of the purchaser or the destination to which the purchaser was taking the goods.

A divided three-judge panel of the Commonwealth Court found in favor of the Commonwealth. The panel majority opinion authored by Judge Smith concluded that the Department's regulatory interpretation of dock sales was consistent with the statute, and therefore dock sales to out-of-state purchasers were calculable as Pennsylvania sales for purposes

---

2. F.O.B. is an abbreviation for "free on board." The significance of the designation is that it sets the point at which title for goods passes to the purchaser. "The general, legal rule is, that upon sale f.o.b. at point of shipment, title passes from the seller the moment there is a delivery to the carrier ... [I]f the sale is made f.o.b. at point of destination, the title does not pass until that point is reached." *Shetzline v. C. & M. Produce Co.*, 101 Pa.Super. 432, 1931 WL 3526 (1931).

of determining the CNI tax. *Gilmour Manufacturing Co. v. Commonwealth of Pennsylvania,* 717 A.2d 619 (Pa.Cmwlth. 1998) (*Gilmour I* ). Judge Doyle dissented without opinion.

Gilmour filed exceptions which the Commonwealth Court, sitting *en banc,* granted. *Gilmour Manufacturing Co. v. Commonwealth of Pennsylvania,* 750 A.2d 948 (Pa.Cmwlth. 2000) (*en banc* ) (*Gilmour II* ). The *en banc* majority, in an opinion by Judge Doyle, acknowledged that the administrative construction of the statute relied upon by the Department was entitled to some deference, but only so long as it tracked the meaning and intent of the statute and was not unreasonable. 750 A.2d at 948. The majority concluded, however, that the Department's interpretation, both as argued in the Commonwealth's brief and as reflected in the regulation, was inconsistent with the statute. In so holding, the majority considered case law from other jurisdictions construing identical, or nearly identical statutes (those decisions uniformly concluded that sales such as these should be deemed out-of-state sales), relevant principles of statutory construction, and the purpose of the CNI tax itself. Accordingly, the *Gilmour II* court entered judgment in favor of Gilmour in the amount of $17,912 plus interest. Judge Smith, joined by Judge Flaherty, dissented, reiterating the position taken in her earlier panel majority opinion in *Gilmour I.*

■ The question before us involves the proper interpretation of a statute. This is a question of law and, thus, our review is plenary. *See C.B. ex rel. R.R.M. v. Commonwealth, Department of Public Welfare,* 567 Pa. 141, 786 A.2d 176, 180 (2001). The General Assembly has directed in the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). Generally speaking, the best indication of legislative intent is the plain language of a statute. *See, e.g., Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted). Furthermore, in construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common

and approved usage. . . ." 1 Pa.C.S. § 1903. Another bedrock principle of statutory construction requires that a statute "be construed, if possible, to give effect to all its provisions," so that no provision is mere surplusage. 1 Pa.C.S. § 1921(a). Finally, the Act directs that all provisions of statutes imposing taxes are to be narrowly construed. *Id.* § 1928(b)(3); *see also Ross–Araco Corp. v. Board of Finance and Revenue,* 544 Pa. 74, 674 A.2d 691, 694 (1996).

The Commonwealth correctly argues that administrative interpretations of a statute, such as the Department's regulation interpreting the Tax Reform Code at issue here, are entitled to some deference, particularly where a statute is technical or complex. But, as the Commonwealth also concedes, and the Commonwealth Court properly recognized, such deference will exist only where the reviewing court is satisfied that the regulation tracks the meaning of the statute, as narrowly construed, and does not violate the intent of the legislation:

> [A regulation] will survive or fail based on the following considerations.
>
> > 'An interpretative rule . . . depends for its validity . . . upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation. . . . .'
>
> *Girard School Dist. v. Pittenger,* 481 Pa. 91, 95, 392 A.2d 261, 263 (1978) (quoting *Uniontown Area School Dist. v. Pennsylvania Human Relations Comm'n.,* 455 Pa. 52, 77–78, 313 A.2d 156, 169 (1973) (footnote omitted)).

*Philadelphia Suburban Corp. v. Board of Finance and Revenue,* 535 Pa. 298, 635 A.2d 116, 118 (1993) (further citations omitted).

The Commonwealth argues that the Department's regulation is a reasonable interpretation of the Tax Reform Code; the regulation has been in existence since 1976 without the General Assembly modifying the statute; and the regulation is a valid exercise of the Department's rule-making authority. Since the regulation is neither clearly inconsistent with the Tax Code nor unreasonable, the Commonwealth argues, the Commonwealth Court erred in failing to defer to the Department and by substituting its own judgment. In addition, the Commonwealth argues that its "delivery rule" interpretation is sensible because the focus should be on the Pennsylvania taxpayer (here Gilmour), not on the buyer and, therefore, "completed sales" in Pennsylvania should be deemed sales within the state. The Commonwealth also notes that the delivery rule it advocates offers the added benefit of ease of administration, since it is "far simpler" to determine where physical delivery occurs than to ascertain the ultimate destination of goods once the goods leave the seller's dock. Finally, the Commonwealth argues that the Commonwealth Court's reliance upon decisions from other jurisdictions was misplaced.

Gilmour responds that the Commonwealth Court correctly interpreted the statute and, since the Department's regulation is inconsistent with the statute, the court was not required to defer to it. Citing to cases from California, Connecticut, Florida, Kentucky, Minnesota, and Wisconsin,[3] Gilmour notes that the reported cases reveal that every other state court which has interpreted language identical or substantially identical to the Pennsylvania statute in question here has construed the provision as the Commonwealth Court did—*i.e.*, as excluding dock sales to out-of-state purchasers from the sales factor enumerator—while no state court has deemed such sales to be sales within the state where the dock was located.

**3.** *See McDonnell Douglas Corp. v. Franchise Tax Bd.*, 26 Cal.App.4th 1789, 33 Cal.Rptr.2d 129 (1994); *Texaco, Inc. v. Groppo*, 215 Conn. 134, 574 A.2d 1293 (1990); *Florida Dept. of Revenue v. Parker Banana Co.*, 391 So.2d 762 (Fla.Ct.App.2d Dist.1980); *Revenue Cabinet v. Rohm & Haas*, 929 S.W.2d 741 (Ky.Ct.App.1996); *Olympia Brewing Co. v. Commissioner of Revenue*, 326 N.W.2d 642 (Minn.1982); *Pabst Brewing Co. v. Wisconsin Dept. of Revenue*, 130 Wis.2d 291, 387 N.W.2d 121 (Wis.App.1986), *review denied*, 130 Wis.2d 544, 391 N.W.2d 209 (1986).

Brief for Appellee, 11–16. Gilmour further notes that the statute here, like the statutes at issue in the other jurisdictions which considered the question, derives from the Uniform Division of Income for Tax Purposes Act (UDITPA).[4] The courts in those jurisdictions have all interpreted the phrase "within this state" as modifying the word "purchaser" and not the word "delivered." Even though Pennsylvania has not specifically adopted UDITPA in this instance, Gilmour argues that since the General Assembly enacted language substantially identical to the language contained in the Uniform Act, that fact weighs in favor of following the courts of other jurisdictions and hewing to the prevailing judicial interpretation. *See* 1 Pa.C.S. § 1927 ("statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them").

Gilmour further argues that the Department's regulation, and the Commonwealth's corresponding construction of the statute, ignores that the statute speaks not only to property "delivered" to purchasers but also to property "shipped." The Commonwealth's "delivery rule," Gilmour maintains, would allow the Commonwealth "to have its cake and eat it too" since the construction applies only to goods "delivered" in Pennsyl-

---

4. As noted above, the Pennsylvania provision reads as follows:

> Sales of tangible personal property are in this State if the property is delivered or shipped to a purchaser, within this State regardless of the f.o.b. point or other conditions of the sale.

72 P.S. § 7401(3)2(a)(16). Section 16(a) of UDITPA provides that:

> Sales of personal property are in this state if:
> (a) the property is delivered or shipped to a purchaser, other than the United States government, within this state regardless of the f.o.b. point or other conditions of the sale.

Unif. Division of Income for Tax Purposes, U.L.A. Div. Inc. Tax § 16. Gilmour recognizes that the Pennsylvania General Assembly has not adopted UDITPA in its entirety, but notes, as the Commonwealth Court did, *see* 750 A.2d at 952 n. 5 750 A.2d 948, that language from the Uniform Act has been adopted in Pennsylvania. In this instance, it is apparent that the substance of the Pennsylvania provision was taken verbatim from UDITPA, except the General Assembly deleted the clause "other than the United States government." However, in an apparent grammatical oversight, the General Assembly deleted only one of the two commas used to set off that clause, thereby giving rise to the differing interpretations of the provision by the parties.

vania and not to goods "shipped." Brief for Appellee, 12–13. Gilmour also argues that the Commonwealth's focus on the fact that the dock is located in Pennsylvania ignores the statutory mandate to ignore delivery or f.o.b. terms. Finally, Gilmour argues that the statute should properly be understood as establishing a "destination test" because weighting the sales factor in favor of the out-of-state contribution to gross income acts as a counterbalance to the fact that the other two factors involved in computing the CNI tax, *i.e.*, property and payroll, are "biased" the other way, in favor of in-state activity.

This Court also has the benefit of an amicus brief filed by the Pennsylvania Chamber of Business and Industry in support of Gilmour. In addition to echoing Gilmour's arguments, the Chamber emphasizes the importance of uniformity in the manner in which income is assigned among the states in which a multijurisdictional taxpayer does business. The Chamber argues that the construction of the statute forwarded by the Commonwealth, if adopted by other states, would have the potential of double-taxing the same sales. The Chamber argues that the Commonwealth's current minority interpretation of this uniform language places Pennsylvania multistate corporations at a competitive disadvantage.

Notwithstanding the age of the Department's regulation, which was apparently promulgated in 1976, this case has presented the first opportunity for the Commonwealth Court, and this Court, to determine whether the regulation is consonant with the statutory command. After careful consideration, we agree with the *Gilmour II* court's holding and reasoning. The *Gilmour II* court found that the phrase "within this State" modifies the immediately preceding word "purchaser," and thus only sales to Pennsylvania purchasers are includable in the numerator of the sales factor for CNI tax purposes. Viewing the plain language of the statutory provision in a common sense fashion, we agree that, as a matter of basic sentence construction, the phrase "within this State" was intended to modify the immediately preceding word "purchaser." This logical construction of the statute also gives effect

to all of its terms, *see* 1 Pa.C.S. § 1921(a), including the term "shipped" and the concluding remonstration that the "f.o.b. point or other conditions of the sale," which obviously could encompass delivery terms, are not to be deemed controlling. Moreover, if the General Assembly had intended "within this state" to modify "delivered," as urged by the Commonwealth, the statute could have been drafted to accomplish that purpose simply by omitting the misplaced comma and inserting the phrase immediately after the word "delivered." Notably, however, that would have required the General Assembly to deviate significantly from the language it obviously adopted from the UDITPA. The statute would then read as follows given the above:

> Sales of tangible personal property are in this State if the property is delivered within this State or shipped to a purchaser within this State, regardless of the f.o.b. point or other conditions of the sale.

As so constructed, the statute would be congruent with the Department's interpretation and inconsistent with Gilmour's interpretation. The problem with the statute as written is that, using the rules of grammar, as we must, one cannot easily ascertain what actions (the verbs) or what parties (the nouns) the phrase "within this State" modifies or references. Since we must apply the rules of grammar and since we must construe the taxing statute in favor of the taxpayer, then Gilmour must, perforce, prevail.

We also agree with the *Gilmour II* court that the fact that other jurisdictions have uniformly interpreted corresponding statutes as employing a destination test, while not controlling, weighs heavily in favor of Gilmour's construction. This is so not only because a uniform interpretation of legislation affecting multistate matters is preferable, *see* 1 Pa.C.S. § 1927, but also because those courts have persuasively explained why their construction is commanded by the language and intent of the legislation. For example, in the *Olympia Brewing* case, the Minnesota Supreme Court noted that "practical considerations" weighed in favor of a destination rule. Those practical considerations included the Minnesota taxing authority's "ina-

bility to justify treating differently" sales where the out-of-state purchaser picked up the goods at the seller's dock and sales where the same purchasers have the goods picked up by common or contract carriers at the same dock:

> This result makes the selection of mode of transportation dispositive, which, as even the commissioner concedes, would be contrary to the statutory language.... We think that to distinguish between a sale within or without a state on the basis of the mode of transportation—whose truck does the transporting—is an untenable distinction.

326 N.W.2d at 647. Similar practical considerations were cited in the *Parker Banana* case as warranting a destination rule. *See* 391 So.2d at 763 (Florida Revenue Department's interpretation would have words "within this state" apply to word "delivered" but not to word "shipped" since it would not treat sales to out-of-state purchasers as in-state sales if shipment was made by common carrier; in rejecting that "tortured construction," court notes that "we see no way in the world that the statute can logically or grammatically be construed so that the words 'within this state' apply only to the word 'delivered' "). The Department's regulation here erects no less valid a distinction which cannot be supported by the plain language of the statute.[5]

We are also persuaded that the purpose of the CNI tax is furthered by this construction. As the *Gilmour II* court reasoned:

**5.** The Commonwealth's asserted distinction between sales to out-of-state purchasers premised upon whether the goods are retrieved by the purchaser or by a common carrier is also problematic because long-standing case law suggests that delivery to a common carrier is tantamount to delivery to the purchaser. *See Commonwealth v. Wiloil Corp.,* 316 Pa. 33, 173 A. 404 (1934); *New York and Pennsylvania Co. v. Cunard Coal Co.,* 286 Pa. 72, 132 A. 828 (1926); *Harvey Probber, Inc. v. Kauffman,* 181 Pa.Super. 281, 124 A.2d 699, 700 (1956) ("The general rule is that a delivery of goods to a carrier pursuant to a contract of sale is a delivery to the buyer sufficient to pass title to the goods and the carrier at once becomes the agent of the buyer."), *citing Popper v. Rosen,* 292 Pa. 122, 140 A. 774 (1928); *Pittsburgh Provision and Packing Co. v. Cudahy Packing Co.,* 260 Pa. 135, 103 A. 548 (1918). It would appear that, under Pennsylvania law, no valid distinction exists between dock sales to out-of-state purchasers and sales to out-of-state purchasers shipped by common carrier.

[T]he tax is designed to measure the amount of commercial activity that an entity engages in during a given year and tax it accordingly.... [S]tatutes permitting a corporation to apportion its sales for purposes of the CNI are designed to represent the contribution of various consumers and purchasers to the entity's overall sales. Specifically, in Pennsylvania, the numerator of the sales factor represents the contribution of Pennsylvania consumers and purchasers to the entity's sales, while the denominator represents the contribution of all consumers and purchasers. Accordingly, including in a corporation's Pennsylvania sales transactions out-of-state purchasers who come into the Commonwealth, pick-up a product and leave the Commonwealth, as the Commonwealth argues, artificially inflates the contribution of Pennsylvania consumers and purchasers to the entity's sales.

750 A.2d at 953 (citation omitted).

With respect to the Commonwealth's argument that the administrative ease in enforcing a delivery rule supports its construction, we note that mere administrative ease cannot justify a regulation which is inconsistent with the language and purpose of the statute. Moreover, since, as the *Gilmour II* court properly noted, the burden falls on the taxpayer to prove an error in the Commonwealth's settlement of the CNI tax, there is no undue administrative burden arising from a proper, plain language interpretation of the statute.

Finally, we note that UDITPA includes a "throwback" provision, which states that sales of tangible property are deemed to be within a state if "the property is shipped from an office, store, warehouse, factory or other place of storage in this state and ... (2) the taxpayer is not taxable in the state of the purchaser." U.L.A. Div. Inc. Tax § 16(b). The throwback provision thus recognizes the power of a home state to tax a sale of goods destined for an out-of-state purchaser if the home state taxpayer is not taxed in connection with the sale in the destination state. The throwback provision provides tax equity in that it would ensure that companies doing business solely in Pennsylvania would ostensibly bear the same tax

burden as multi-state businesses operating in our state. Our General Assembly has neither adopted this provision nor enacted an analogous throwback provision. To the contrary, Section 401(3)2(a)(3) of the Code provides:

> (3) For purposes of allocation and apportionment of income under this definition, a taxpayer is taxable in another state if in that state the taxpayer is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax *or if that state has jurisdiction to subject the taxpayer to a net income tax, regardless of whether, in fact, the state does or does not.*

72 P.S. § 7401(3)2(a)(3) (emphasis added). It is, of course, for the General Assembly to determine whether a throwback provision would better effectuate the intended statutory scheme. Similarly, if the General Assembly wishes to adopt an interpretation of the tax statute to address the administrative concerns of the Department and to make clear that dock sales are calculated as in-state revenues for taxation purposes, it could easily do so as outlined above.

For the foregoing reasons, we agree with the *Gilmour II* court that the Department of Revenue's regulation is contrary to the clear wording of Section 401(3)2(a)(16) of the Tax Reform Code. Accordingly, we affirm the order below entering judgment in favor of Gilmour.

Former Chief Justice FLAHERTY and former Chief Justice ZAPPALA did not participate in the decision of this case.