**TOWNSHIP OF DERRY, Petitioner**

v.

**PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY, the Milton S. Hershey Medical Center, and Pennsylvania State University, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2010.

Decided Jan. 24, 2011.

490

Kimberly M. Colonna, Harrisburg, for petitioner.

James M. Horne, State College, for respondent Milton S. Hershey Medical Center.

Kelly K. Smith, Harrisburg, for respondent Pennsylvania Department of Labor and Industry.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Petitioner, Derry Township (Township) filed a Petition for Review in this Court's original jurisdiction, seeking a declaratory judgment that Section 401.1 of Pennsylvania's Uniform Construction Code, 34 Pa. Code § 401.1 (Section 401.1), is overbroad and exceeds the authority provided to the Department of Labor and Industry (Department) by the Pennsylvania Construction Code Act (PCCA),[1] in that Section 401.1 defines the term "State-owned buildings" as including buildings owned by institutions which are merely State-related. Having overruled the preliminary objections filed by the Department, the Milton S. Hershey Medical Center (Medical Center), and the Pennsylvania State University (PSU) (collectively, Respondents), this Court is now called upon to address the Township's Motion for Summary Judgment. For the following reasons, we deny the Township's Motion for Summary Judgment, and enter judgment as a matter of law in favor of Respondents.

In 1999, the General Assembly enacted the PCCA. Except for certain limited ex-

---

1. Act of November 10, 1999, P.L. 491, *as amended,* 35 P.S. §§ 7210.101–7210.1103.

ceptions, the PCCA applies to "the construction, alteration, repair, and occupancy of all buildings in this Commonwealth." 35 P.S. § 7210.104(a). One of the provisions contained in the PCCA provides:

The department shall maintain plan and specification review and inspection authority over all State-owned buildings. State-owned buildings shall be subject to regulations promulgated under this act. The department shall notify municipalities of all inspections of State-owned buildings and give municipalities the opportunity to observe the department inspection of such buildings.

Section 105(b)(1) of the PCCA, 35 P.S. § 7210.105(b)(1). The PCCA also provided for the adoption of a Uniform Construction Code (UCC) and directed the Department to promulgate regulations adopting the 1999 Building Officials and Code Administrators International, Inc. (BOCA) code as the UCC. In 2004, the Department adopted the UCC, which includes the regulation at issue, Section 401.1, defining "State-owned building" as "[a] building owned by or to be constructed for Commonwealth entities consisting of the General Assembly, the Unified Judicial System, the Pennsylvania Higher Education Assistance Agency, an executive agency, independent agency, and a State–affiliated entity *or State-related institution* as defined in 62 Pa.C.S. § 103 (relating to definitions)." Section 401.1 (emphasis added). Under 62 Pa.C.S. § 103, "State-related institutions" are listed as: "The Pennsylvania State University, the University of Pittsburgh, Lincoln University or Temple University."

As a PSU subsidiary, the Medical Center operates a significant portion of its health care system on a campus owned by the Medical Center and PSU. The campus is a substantial facility on large tracts of real estate, and includes multiple improvements, such as an acute care hospital, parking areas, and buildings housing various physician practices and other functions. Also, PSU's College of Medicine conducts certain operations on the Medical Center's campus. The campus is located entirely within the Township; and the Township has a zoning ordinance that provides for the issuance of building permits and certificates of occupancy for all buildings within the Township. Under the zoning ordinance, the Township zoning officer examines all applications for building permits and land use, determines whether the proposed activity conforms to the zoning ordinance, and after inspecting the use or structure, issues building permits and/or certificates of occupancy. The zoning ordinance further provides that no building permit shall be issued until the associated fees are paid to the Township. Thus, strictly as a result of Section 401.1, the Township's ordinance stands in direct conflict with the PCCA with respect to whether the Department or the Township has review and inspection authority regarding the PSU buildings that are located within the Township.

During the last several decades, the Medical Center has undertaken various construction and renovation projects, subject to the Township's review, permitting, and approval process. Prior to the PCCA's enactment, both PSU and the Medical Center appropriately submitted applications for building permits to the Township. Since 2004, however, neither the Medical Center nor PSU has sought the Township's approval for the construction of any buildings or the issuance of any permits. On at least two separate occasions, March 23, 2004, and February 7, 2006, the Medical Center submitted paperwork to the Township notifying the Township of building and land development plans. In each case, although the Township reviewed the plans and prepared

building permits, the Medical Center did not pay the Township the permit fees or pick up the building permits, and the Medical Center proceeded with its plans. The Township now asserts:

> Upon information and belief, the Department approved the plans, issued the building permits, and conducted inspections based upon the provision of PCCA which provides the Department shall have plan review and inspection authority over 'state-owned buildings,' 35 P.S. § 7210.105(b)(1), and based upon the Department's own over inclusive definition of "state-owned building." 34 Pa. Code § 401.1.

Petition for Review ¶ 32. Thus, the Township has been effectively divested of its ability to regulate PSU's building projects within the Township, and divested of its ability to collect permit fees in relation thereto. The Township takes the position that such action is unlawful, and asks this Court to declare the Department's definition of "State-owned buildings" invalid as being overly broad and excessive of the Department's authority to the extent that the definition includes buildings merely owned by State-related institutions.

This Court initially dismissed the Township's petition in 2007, but the matter was remanded to this Court following the Township's appeal pursuant to the *Per Curiam* Order and Opinion of the Supreme Court of Pennsylvania in *Township of Derry v. Department of Labor & Industry,* 593 Pa. 480, 932 A.2d 56 (2007). On remand, this Court overruled Respondents' Preliminary Objections, holding that the standard for demurrer had not been met by Respondents, and noting that the application of the regulation at issue to the property at issue appeared to be erroneous, given that the property is not owned by the Commonwealth. *Twp. of Derry v. Dep't of Labor & Indus.,* 940 A.2d 1265 (Pa.Cmwlth.2008). Thereafter, the Township filed the instant Motion for Summary Judgment.[2]

■ The issue now before the Court is whether the Township is entitled to judgment as a matter of law, based on the assertion that the Department's regulation defining "State-owned building" is legally invalid in that, and to the extent that, it includes within its scope buildings owned by PSU which do not function as Commonwealth property. We now hold that the Department's regulation defining "State-owned building" is *not* invalid as a matter of law to the extent that it includes within its scope buildings owned by PSU.

The Township argues that it is entitled to judgment as a matter of law because the undisputed facts demonstrate that the Department's regulation exceeds the scope of the authority granted to the Department under the PCCA. While the PCCA grants the Department authority over "State-owned buildings," the Township complains that, with its regulation, the Department gives itself authority over buildings that are not owned by the Commonwealth, including, specifically, buildings owned by State-related institutions such as PSU. The Township takes the position that the Department's definition of "State-owned building" is unreasonably broad, and directly contrary to the ruling in *Pennsylvania State University v. Derry Township School District,* 557 Pa. 91, 731 A.2d 1272 (1999), where the Pennsylvania Supreme

---

**2.** Viewing the record in a light most favorable to the nonmoving party, summary judgment is proper where there is no genuine issue of material fact and judgment is appropriate as a matter of law. Any doubts as to the existence of a genuine issue of material fact are resolved against the moving party. *Metro. Edison Co. v. Reading Area Water Auth.,* 937 A.2d 1173 (Pa.Cmwlth.2007).

Court held that the property of PSU is not so controlled by the Commonwealth as to constitute State-owned property exempt from municipal real estate taxes.

Respondents argue, on the other hand, that the presence or absence of a conflict between the Department's definition of "State-owned building" and the holding in *Derry Township School District* is completely irrelevant to this case, as the Supreme Court was concerned with whether PSU property is equivalent to Commonwealth property for purposes of real estate taxation, not the issuance of construction permits. Respondents further argue that the definition of "State-owned building" contained in the UCC is a valid exercise of the Department's rulemaking authority, as the regulation was adopted within the scope of the Department's authority, pursuant to proper procedure, and is reasonable. They argue that the definition of "State-owned building," as it stands, contributes to the uniform application of the PCCA and UCC to State-related institutions such as PSU, an institution which maintains campuses in many municipalities throughout the Commonwealth, and that defining the term "State-owned building" was necessary for implementation of the PCCA. Respondents emphasize that the courts may not substitute judicial discretion for that of administrative officers who have kept within the bounds of their administrative powers, and that the Department is entitled to deference unless there is some bad faith, the regulation constitutes a manifest abuse of discretion, or the regulation is purely arbitrary.

While each party presents compelling arguments, we find most compelling Respondents' current argument that the General Assembly obviously agrees with the Department's action, since it expressly adopted the regulatory definition of "State-owned building" in a subsequent amendment to the PCCA. *See* 35 P.S. § 7210.902(b)(4)(ii) ("Section 902").[3] Thus, Respondents argue that the regulation is consistent with legislative intent, as demonstrated by the fact that the General Assembly has effectively ratified the definition at issue. We agree. We specifically hold that the Department's regulation defining "State-owned building" is *not* invalid as a matter of law because the General Assembly has since adopted the Department's inclusion.

■ There is no disagreement as to the fact that there are no genuine issues of material fact in this case; therefore, summary judgment is appropriate to resolve the purely legal issue of whether the regulation in question is a valid exercise of the Department's rule-making authority. This Court thoroughly examined the issue in the context of Respondents' Preliminary Objections, and, in that context, stated the following analysis which is incorporated herein.

> The crux of the issue before this Court is whether . . . the regulation exceeds the scope of [the Department's] authority. The General Assembly authorized [the Department] to develop regulations pursuant to its plan and specification review and inspection authority over state-owned buildings. Whether [the Department's] definition of "state-owned buildings" improperly expands its authority to buildings owned not by the state, but to buildings owned by state-related institutions, or potentially even private corporations, is one of law for this Court to decide. *See Com-*

---

**3.** Section 902 of the PCCA. We note that while the PCCA was enacted on November 10, 1999, Section 902 was enacted as an amendment to the PCCA as part of Section 2 of the Act of December 22, 2005 (P.L. 478).

*monwealth v. Gilmour Manufacturing Company,* 573 Pa. 143, 822 A.2d 676 (2003). "[W]hen convinced that the interpretive regulation adopted by the agency is unwise or violative of legislative intent, courts are free to disregard the regulation." *Id.* at 150, 822 A.2d at 680 (quoting [*Pennsylvania Human Relations Commission v. Uniontown Area School Dist.*], 455 Pa. 52, 77–78, 313 A.2d 156, 169 (1973)).

Courts traditionally accord some deference to the interpretation of a statute by an agency charged with its administration. *Gilmour.* Further, an agency's interpretation of a statute is entitled to substantial deference where the regulation tracks the meaning of the statute and does not violate the legislative intent. [*SEI Investments v. Commonwealth of Pennsylvania,* 890 A.2d 1130, 1135 (Pa.Cmwlth.2006) (citing *Davis v. Department of Public Welfare,* 776 A.2d 1026 (Pa.Cmwlth.2001)); *Gilmour* ].

When an agency adopts a regulation pursuant to its legislative rule-making power, "it is valid and binding upon courts so long as it is *(a) adopted within the agency's granted power,* (b) issued pursuant to proper procedure, and (c) reasonable." *Tire Jockey Service, Inc. v. Commonwealth of Pennsylvania Department of Environmental Protection,* 591 Pa. 73, 108, 915 A.2d 1165, 1186 (2007) (emphasis added). The statutory grant of authority by which the General Assembly vested authority in the [Department] extends to buildings owned by the Commonwealth.

PSU is a state-related institution. According to the pleadings, the Medical Center is a not-for-profit corporation, a separate legal entity, that is a subsidiary or affiliate of PSU. The question of ownership hinges on whether the "real property is so thoroughly under the control of the Commonwealth, that, effectively,

the institution's property functions as Commonwealth property. *PSU's property does not meet this test."* *Pennsylvania State University v. Derry Township School District,* 557 Pa. 91, 96, 731 A.2d 1272, 1274 (1999) (emphasis added).

Accordingly, it appears to this Court that the application of the regulation to the Medical Center property, as the property is not owned by the Commonwealth, is erroneous. The regulation, as applied, is potentially overbroad, and preempts Derry's ability to grant permits and receive fees for construction and occupancy of buildings within its confines. . . .

Because the buildings in question are owned by PSU and the Medical Center, and not by the Commonwealth, application of the [Department] regulation to the construction and renovation of the pharmacology lab and the Cancer Institute demonstrates the [potentially] overbroad nature of the regulation, and calls into question whether [the Department] has exceeded the scope of its statutorily granted authority.

*Twp. of Derry v. Dep't of Labor & Indus.,* 940 A.2d at 1269–1270 (underline added). While this Court's prior analysis is incorporated herein, we note that the prior analysis does not include an examination of Respondents' argument presently before the Court, that the General Assembly has expressly adopted the regulatory definition of "State-owned building" by enacting Section 902.

On the Township's Motion for Summary Judgment, the crux of the issue before this Court remains: whether the regulation exceeds the scope of the authority delegated to the Department by the General Assembly. Based on the above analysis, and without taking into account the import of Section 902, it would appear that the regu-

lation does exceed the scope of the Department's delegated authority, as the General Assembly did not delegate authority with respect to non–State–owned buildings. The controlling issue, however, is the definition of the term "State-owned building" as used in the PCCA; specifically, whether the General Assembly intended, by its use of the term "State-owned building," to delegate authority with respect to buildings owned by State-related institutions such as PSU.

We are persuaded that the General Assembly's intent to include buildings owned by State-related institutions within the definition of "State-owned buildings" is demonstrated by the fact that the General Assembly has adopted the regulatory definition of "State-owned building" by its enactment of Section 902.

■ As stated in the Statutory Construction Act: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). Further, where there may be some ambiguity with respect to the terms of a statute, the intention of the General Assembly may be ascertained by considering legislative and administrative interpretations of the statute. 1 Pa.C.S. § 1921(c)(8).

> We do consider significant in this regard the fact that the legislature [chooses] to use [a] disputed phrase.... We believe that when the legislature, in subsequent legislation, chooses to use the same disputed language as it had used in previous legislation, and where, as here, that language has been interpreted by ... an administrative agency ... the legislature may be presumed to have adopted those interpretations.

*Ne. Bldg. Registered v. Commonwealth,* 41 Pa.Cmwlth. 403, 399 A.2d 449, 452 (1979). This is especially true where the General Assembly not only uses the same disputed term, but also specifically uses the disputed interpretation of that term. "It is established that administrative interpretations, not disturbed by the Legislature, are appropriate guides to legislative intent." *Hosp. Ass'n of Pa. v. MacLeod,* 487 Pa. 516, 523 n. 10, 410 A.2d 731, 734 n. 10 (1980).

Here, the General Assembly has, in fact, expressly adopted the regulatory definition of "State-owned building" by restating the definition almost verbatim in a subsequent amendment to the PCCA, specifically, in Section 902(b)(4)(ii). That section reads, in relevant part:

> As used in this subparagraph, the term "State-owned building" means a building owned or constructed for Commonwealth entities consisting of the General Assembly, the Unified Judicial System, the Pennsylvania Higher Education Assistance Agency, an executive agency, an independent agency, and a State-affiliated entity or State-related institution, as defined in 62 Pa.C.S. § 103 (relating to definitions).

Section 902(b)(4)(ii). The nearly verbatim restatement of the definition in question in Section 902 gives firm indication that the General Assembly has adopted the Department's definition of the term "State-owned buildings." Because the General Assembly chose to use the disputed definition in subsequent related legislation, we presume that the General Assembly has adopted that definition, and conclude that the Department's promulgation of the definition in interpreting the PCCA was within its delegated authority as being consistent with legislative intent. In light of the legislative adoption of the definition at issue, we hold that Section 401.1 is not overly broad.

For the above stated reasons, the Township's Motion for Summary Judgment is denied, and judgment as a matter of law is entered in favor of Respondents.

Judge BROBSON did not participate in the decision in this case.

### ORDER

AND NOW, this 24th day of January, 2011, the Township of Derry's Motion for Summary Judgment is denied. Judgment as a matter of law is entered in favor of Respondents.