John D. CRISAMORE, Appellant,

v.

CITY OF YORK and York Police Pension Fund Association.

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 1996.

Decided Feb. 13, 1997.

Jennifer A. Kline, York, for appellant.

E. Thomas Henefer, Reading, for appellees.

Before PELLEGRINI and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

KELLEY, Judge.

John D. Crisamore appeals from an order of the Court of Common Pleas of York County (trial court) which sustained preliminary objections filed by the City of York (City) and the York Police Pension Fund Association (association) (hereinafter collectively referred to as "defendants") to a complaint filed by Crisamore, and dismissed the complaint. We affirm.

The facts, as alleged in Crisamore's complaint, are as follows. On April 1, 1968, Crisamore became employed by the City's police department as a police officer. On or about November 23, 1987, Crisamore suffered an injury to his left knee and ankle in the course and scope of his employment with the City. Crisamore continued to perform his full duties as a police officer after his work-related injury.

On April 1, 1988, Crisamore completed twenty years of continuous service with the City. Thereafter, on August 2, 1988, Dr. Van Giesen, a panel physician for the City from whom Crisamore received treatment, issued a report indicating that Crisamore was permanently disabled and was no longer able to perform his duties as a police officer. At that time, the City placed Crisamore on light duty work. Based on Dr. Van Giesen's opinion that Crisamore was disabled from his job as a police officer, Crisamore sought to retire on a disability pension since he had not yet reached the regular retirement age of fifty.

The City sought a second opinion concerning Crisamore's medical condition and, on February 28, 1989, Crisamore was examined by Dr. Butera. Dr. Butera confirmed Dr.

Van Giesen's opinion that Crisamore was disabled and was unable to perform his duties as a police officer. On May 1, 1989, the City declared Crisamore eligible to retire on a disability pension. Crisamore received a disability pension in the amount of $15,285.83 per year beginning on approximately May 1, 1989, based on his salary at the time of his retirement.

On or about June 7, 1989, Crisamore began receiving workers' compensation benefits for his work-related injury, effective May 1, 1989, in the amount of $361.00 per week. When Crisamore began receiving workers' compensation benefits, the defendants ceased paying Crisamore his disability pension benefits.

On May 21, 1990, Crisamore commuted the remaining 492 weeks of partial disability benefits at the rate of $121.95 per week. Following the commutation, the defendants resumed payment of Crisamore's disability pension benefits, but deducted $121.95 per week from the pension benefits based on the partial disability rate. On October 30, 1993, Crisamore reached fifty years of age.

On or about September 5, 1995, Crisamore filed a complaint against the City asserting that it had improperly reduced his pension benefits based on his receipt of workers' compensation benefits. Crisamore than filed an amended complaint (complaint) joining the association as a defendant in this matter.

In Count I of the complaint, Crisamore stated that section 4301 of the Third Class City Code [1] (Code) required cities to establish, by ordinance, a police pension fund. He stated that Article 169 of the York City Ordinance (Ordinance) established the Police Pension Fund (Fund) for aged and disabled police officers. Crisamore alleged that, as of the date of his disability on August 2, 1988, the Code did not contain any provision for a set-off or credit for the receipt of workers' compensation benefits. Crisamore alleged that from June 7, 1989 to October 30, 1993, defendants either failed to pay him any disability pension benefits based on his receipt of workers' compensation benefits, or they reduced his disability pension benefits by the

1. Act of June 3, 1931, P.L. 932, *as amended*, 53 P.S. § 39301.

amount of his workers' compensation benefits. Crisamore also alleged that, despite his full vesting in the Fund on October 30, 1993, defendants have refused to pay him his full retirement pension benefits and have wrongfully asserted a credit in the amount of $121.95 per week against his pension. Crisamore sought recovery of the benefits due to him from August 15, 1989 to the present.

In Count II of the complaint, Crisamore alleged that he had a property interest in his pension plan which was protected by both the Pennsylvania and United States Constitution. Crisamore alleged that he was not provided with notice or an opportunity to be heard before his pension benefits were reduced or cut off. He further alleged that other similarly situated police officers had received both disability pension benefits and workers' compensation benefits without any set-off being taken. As such, Crisamore alleged violations of his due process and equal protection rights under 42 U.S.C. § 1983.

Defendants filed preliminary objections to Crisamore's complaint. They asserted that the complaint failed to state a cause of action against them for violations of the terms of the Fund because the alleged reduction in Crisamore's disability pension benefits was in accordance with the lawful terms of the Fund.[2] They also asserted that their alleged failure to enforce the terms of the Fund with respect to other police officers did not give Crisamore the right to have the terms of the Fund ignored in his case.

By order dated June 18, 1996, the trial court sustained the preliminary objections filed by defendants. On October 3, 1988, section 4303.2[3] of the Code became effective and provided as follows: "The pension fund shall be subrogated to the right of the claimant to the extent of any payments made under the act of June 2, 1915 ... known as 'The Pennsylvania Workmen's Compensation Act'...." 53 P.S. § 39303.2(d). The trial court stated that Crisamore's assumption that his disability occurred prior to the effective date of section 4303.2 of the Code was incorrect. The trial court pointed out that Crisamore became entitled to receive disability pension benefits on May 1, 1989, which was after the passage of section 4303.2 of the Code requiring a set-off for workers' compensation benefits. The trial court concluded that section 4303.2 of the Code was controlling for all disability retirements which became effective after October 3, 1988, no matter when the injury occurred or when doctors' opinions were given.

Crisamore then filed with the trial court a statement of matters complained of on appeal. He asserted that the trial court had improperly dismissed his claim for "regular" retirement benefits as of October 30, 1993, the date when he satisfied the age and length of service requirements for such benefits. In a second opinion dated August 8, 1996, the trial court concluded that Crisamore had failed to state a claim for regular retirement benefits because he had failed to allege that he had made a formal request for such benefits. The trial court further concluded that it would have been pointless to allow Crisamore to amend his complaint because it was conceded that he could not prove that he had ever made a formal request for regular retirement benefits. The trial court pointed out that pension regulations required Crisa-

---

**2.** Section 169.06 of the Ordinance provides, in pertinent part, as follows:

> (d) Should an officer or employee of the Police Department become so permanently disabled as to render him unable to perform his duties of his office or position after ten or more years of service, he shall during such disability be entitled to a pension of a percentage of his salary to be determined as follows:
>
> \* \* \* \* \* \*
>
> (2) Any amounts received by such officer or employee under the provisions of the Workmen's Compensation Law or Occupational Disease Act for an injury which results in such permanent disability shall be credited

against such disability pension when such amounts cover a period of time after the retirement of the officer or employee herein.(Ord. 6–1981 § 1. Passed 2–17–81.)

> \* \* \* \* \* \*
>
> (4) Proof of disability shall consist of the sworn statements of two practicing physicians designated by the Board that the officer or employee is in a condition of health which would permanently disable him from performing the duties of his position or office.

Reproduced Record (R.) at 13A–14A.

**3.** *Added by* the Act of October 3, 1988, P.L. 735, 53 P.S. § 39303.2.

more to formally request placement on retirement status.

Crisamore now brings the present appeal and raises the following issues: (1) Whether the trial court erred in dismissing Crisamore's complaint because it set forth a cause of action against defendants for the recovery of benefits that were improperly deducted from his disability pension; and (2) Whether the trial court erred in dismissing Crisamore's complaint because it set forth a cause of action against defendants for his regular retirement benefits.

Initially, we note that our scope of review of a challenge to the sustaining of preliminary objections in the nature of a demurrer is to determine whether, on the facts alleged, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa.Cmwlth. 243, 629 A.2d 270, 271 n. 3 (1993). We must accept as true all well pled allegations and material facts averred in the complaint, as well as inferences reasonably deducible therefrom, and any doubt should be resolved in favor of overruling the demurrer. *Id.* Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *Bower v. Bower*, 531 Pa. 54, 611 A.2d 181 (1992).

■ In support of this appeal, Crisamore points out that section 4303.2 of the Code, which includes the set-off provision with respect to the receipt of workers' compensation benefits, did not become effective until October 3, 1988. He argues that the Code did not contain a set-off provision prior to October 3, 1988 and that defendants did not claim in their preliminary objections that he was not disabled prior to October 3, 1988. Crisamore emphasizes that he was, in fact, disabled before October 3, 1988. He notes that he suffered his work-related injury in November 1987 and was permanently disabled from his regular job as a police officer as of August 1988.[4] As such, Crisamore argues that section 4303.2 of the Code does not apply to reduce his benefits and that defen-

dants have improperly taken a credit against his disability pension benefits. We disagree.

There is no dispute that Crisamore was entitled to retire on a disability pension. The question herein is when he vested in his right to retire on a disability pension. Crisamore contends that he was entitled to receive a disability pension on August 2, 1988, the day he alleges he became permanently disabled. The defendants counter that Crisamore was not disabled until May 1989 when he stopped working as a full-time police officer.

The City's Ordinance, Article 169, which governs the Fund, provides that proof of an officer's disability "shall consist of the sworn statements of two practicing physicians designated by the Board that the officer or employee is in a condition of health which would permanently disable him from performing the duties of his position or office." Section 169.06 of the Ordinance, R. at 14A. The facts, as alleged by Crisamore, show that Crisamore secured a statement from one physician, Dr. Van Giesen, on August 2, 1988. The facts show that Crisamore was examined by a second doctor on February 28, 1989, after which Dr. Butera agreed with Dr. Van Giesen that Crisamore was disabled and unable to perform his duties as a police officer. Thereafter, the City approved Crisamore's retirement on a disability pension on May 1, 1989.

It is unclear when the second doctor, Dr. Butera, notified the City of his concurrence with Dr. Van Giesen's opinion that Crisamore was disabled; however, it is clear from the alleged facts that the earliest Dr. Butera could have notified the City of such was February 28, 1989. Therefore, under the provisions of the Fund, Crisamore did not meet the requirements to receive a disability pension until February 28, 1989 which is after the October 3, 1988 effective date of section 39303.2(d) of the Code. Accordingly, the provisions of section 39303.2(d) apply to Crisamore's disability pension and the trial court did not err in sustaining the defen-

---

4. Pursuant to section 4303.2 of the Code, "total disability" is defined as "permanent mental or physical impairment which rendered the police officer unable to perform his duties." 53 P.S. § 39303.2(e).

dants' preliminary objections with respect to Count I of the complaint.

■ With respect to the second issue, Crisamore asserts that preliminary objections dismissing his entire complaint were not appropriate because he was also seeking regular retirement benefits as of October 30, 1993. He points out that, as of October 30, 1993, he was fully vested in the Fund and that the City was not entitled to a credit against his regular retirement benefits. Crisamore notes that the defendants have not addressed this issue in their preliminary objections. Crisamore further states that the trial court indicated that his complaint was dismissed because he did not allege that he had formally requested regular retirement benefits. He argues that case law is clear that parties should be given liberal leave to amend complaints. Crisamore also asserts that nowhere in the record does it appear that he could not prove that he made a request for regular retirement benefits.

Defendants counter that Crisamore failed to plead the satisfaction of conditions precedent to the recovery of regular retirement benefits. In particular, he failed to plead that he ever requested regular retirement benefits. Defendants point out that it is premature for Crisamore to file suit over the denial of an application for regular retirement benefits because such an application has not yet been made and rejected.

A review of Crisamore's complaint herein reveals that he did not allege that he had formally requested that he be placed on regular retirement status. He merely alleges that despite his full vesting in the retirement pension fund on October 30, 1993, the defendants have refused to pay him his full retirement pension benefits. As correctly pointed out by the trial court, the provisions of the Fund require that a potential retiree formally make a request to be placed on retirement status. R. at 13A.

Crisamore contends that the trial court should have permitted him leave to amend his complaint. Herein, the trial court determined that it would not have done any good to allow Crisamore to amend the complaint since it was conceded that Crisamore could not prove having ever made such a request.

Crisamore disputes this statement by the trial court and argues that the record does not support such a statement.

■ Leave to amend a complaint is discretionary with the trial court. *Division 85 of the Amalgamated Transit Union v.Port Authority of Allegheny County,* 71 Pa.Cmwlth. 600, 455 A.2d 1265 (1983). "'The right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully.'" *Id.* 455 A.2d at 1267, quoting *Otto v. American Mutual Insurance Co.,* 482 Pa. 202, 205, 393 A.2d 450, 451 (1978).

Upon review of the complaint and the provisions governing the Fund, we believe that the trial court's failure to grant Crisamore leave to amend his complaint was not an abuse of discretion. The trial court determined that an amendment to Crisamore's complaint could not be accomplished successfully. This was well within the trial court's discretionary authority.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, this 13th day of February, 1997, the order of the Common Pleas of York County, dated June 18, 1996, at No. 95–SU–03500–01, is affirmed.