Catherine SLIVO, individually and on behalf of others similarly situated, Appellant

v.

CITY OF PITTSBURGH MUNICIPAL PENSION FUND

Catherine Slivo, individually and on behalf of others similarly situated

v.

City of Pittsburgh Municipal Pension Fund, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 2, 2005.

Decided Aug. 19, 2005.

As Amended Nov. 3, 2005.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Catherine Slivo (Slivo) appeals two orders of the Court of Common Pleas of Allegheny County (trial court) that changed the starting date of her disability pension from that established by the City of Pittsburgh Municipal Pension Fund (Fund). Slivo contends that her benefits should have started the day her application form was filed with the Fund and not, as the trial court held, the day she proved the existence of a total and permanent disability. The Fund cross-appeals, asserting that Slivo was not entitled to have her benefits begin until the Board of Directors of the Fund (Board) voted to award them. The appeals have been consolidated.[1]

## BACKGROUND

Slivo worked as a clerk typist for the City of Pittsburgh until physical and mental illness required her to take administrative leave on February 25, 1997; her employment terminated in September of 1998. When Slivo inquired about her eligibility for a disability pension, she learned that she was two months shy of the eight-year credited service time required to be eligible for disability. However, the Fund agreed to allow her to qualify by purchasing service credit for the time she spent on leave of absence. Slivo then presented the Fund with a letter from her physician that she was disabled. In response, the Fund sent her an application form, which she completed and returned on March 23, 2000.[2] Reproduced Record at 271.

Robert F. Daley and D. Aaron Rihn, Pittsburgh, for appellant, C. Slivo.

Michael R. Bucci, Jr., Pittsburgh, for appellees.

1. Slivo's appeal from the August 5, 2004 Order is docketed in this Court to 2433 C.D. 2004; the Fund's cross appeal is docketed to 2434 C.D.2004. Slivo's appeal from the September 13, 2004, Order is docketed to 2029 C.D.2004; the Fund's cross appeal is docketed to 2030 C.D.2004. The cases were consoli- dated by order of this Court on November 18, 2004.

2. The practice of the Fund is to provide a claimant with an application for a disability pension only after the applicant has provided a qualifying letter from a physician attesting to the employee's inability to engage in regu-

All members seeking either disability or retirement pension benefits from the Fund must submit a "proper application."[3] Section 7 of the Act of August 1, 1975, P.L. 169, 53 P.S. § 23587 (Pension Act of 1975). The Fund does not consider an application for disability to be "proper" until three physician statements attesting to the applicant's disability have been submitted. This is because Section 1 of the Pension Act of 1975, 53 P.S. § 23581,[4] states that a "total and permanent disability" is proved by the submission of sworn statements from three physicians.

Initially, only two of the three physicians who examined Slivo determined that she was disabled, and her application was, accordingly, denied on July 20, 2000. Slivo appealed, but the parties settled when the Fund agreed to allow Slivo to be examined by a fourth physician. On March 8, 2001, this replacement physician found her to be totally disabled. At its next regular monthly meeting, the Board granted Slivo a disability pension, effective April 30, 2001.

After receiving her first pension payment, Slivo complained that the amount of her disability payment was erroneous. She maintained that she was entitled to receive a benefit payment as of the first day of the month of her initial application, i.e., March 1, 2000. Slivo then filed suit in federal court, which abstained.[5] Slivo then sought declaratory relief from the trial court. Both parties filed motions for judgment on the pleadings.

The single issue before the trial court was the correct inception date of Slivo's disability pension benefits under the applicable statute and ordinance.[6] Section 10(a) of the Pension Act of 1975 provides that "monthly payments for immediate pensions shall be payable beginning with the *first full calendar month following the month in which retirement occurs **or** the calendar month in which application for pension is made*, whichever is later" 53 P.S. § 23590(a) (emphasis added).[7] Slivo argued that because she returned the Fund's application form to it in March 2000, she was entitled to receive benefits as of March 1, 2000.[8] The Fund respond-

---

lar work. This letter is not part of the formal application which requires three additional statements of disability from physicians.

3. The term "proper application" appears throughout Section 7 of the Pension Act of 1975, 53 P.S. § 23587. A "proper application" must be filed by applicants seeking a retirement pension, Section 7(a); a deferred pension, Section 7(b) and (e); or a disability pension, Section 7(c). *See infra* text of Section 7 in note 15.

4. It states in relevant part, as follows:
   *Proof of total and permanent disability shall consist of the sworn statement of three practicing physicians* who have been designated by the board that the member is in a permanent condition of health which would totally disable him from performing the duties of his position or office.
   53 P.S. § 23581 (emphasis added).

5. The District Court abstained because the Pension Act of 1975, and the City of Pitts-

burgh Municipal Ordinance 14, § 192.02 (Ordinance 14) required a definitive construction by a state appellate court before the federal court could decide the claims in Slivo's class action suit.

6. Both the Fund and Slivo argue that the provisions of the Pension Act of 1975 and Ordinance 14 support their respective positions. Because Ordinance 14 closely follows the language of the Pension Act of 1975, we consider only the Pension Act of 1975 in this opinion.

7. *See infra* complete text of Section 10 in note 13.

8. Slivo does not explain how, under her reading of Section 10(a), she is entitled to receive benefits as of March 1, 2000, as opposed to any other day in March.

ed that Section 10(a) does not apply to payment of disability pension benefits but only to retirement pension benefits.

The trial court agreed with the Fund, holding that Section 10(a) of the Pension Act of 1975 speaks only to *retirement* pensions because it provides that "immediate pensions shall be payable ... the month in which retirement occurs." 53 P.S. § 23590(a). The trial court further reasoned that a disability pension cannot be an "immediate" pension because the statutory definition of "total and permanent disability" requires, *inter alia*, a six-month period of incapacity before benefits can begin. Section 1 of the Pension Act of 1975, 53 P.S. § 23581.[9] Finally, the trial court found that "the filing of a proper application," as required in Section 7(c) of the Pension Act of 1975,[10] occurs when the applicant has submitted the statements of three physicians that the applicant is disabled. Accordingly, in an order dated August 5, 2004, the trial court held that the inception date for Slivo's disability pension benefits was February 11, 2001, the date she was found to be disabled by the fourth physician.

Slivo and the Fund appealed.[11] In addition, the Fund moved for modification of the order of August 5, 2004, which motion was granted in part and denied in part.

By order of September 13, 2004, the trial court modified its first order to change the effective date of Slivo's disability pension from February 11, 2001, to March 8, 2001, the date on which the third medical finding of disability was filed with the Fund. Both parties appealed the trial court's second order.

On appeal, Slivo presents two issues. First, she contends that the trial court erred in finding that Section 10(a) did not apply to disability pensions and, therefore, she was entitled to begin receiving benefits when her application form was returned to the Fund in March of 2000. Second, she contends that the trial court erred in holding that the term "proper application," as used in Section 7(c), includes the submission of three physician statements of disability.

For its part, the Fund asserts that the trial court erred in requiring the Fund to pay pension benefits to Slivo prior to its ability to obtain the monies needed to do so. The Board meets on the third Thursday of each month, and only after it has voted to approve a pension can it obtain funds from the Comprehensive Municipal Pension Trust Fund (Trust),[12] which holds and invests monies for numerous pension funds, including the Fund. The Trust re-

9. It states, in pertinent part, that

a "total and permanent disability" is one where there is a "[p]ermanent incapacity due to bodily injury or disease which *for a period of at least six consecutive months* has rendered the member unable to perform the duties for which he was employed."

53 P.S. § 23581 (emphasis added).

10. It states:

(c) On or after January 1, 1975, any member who suffers a total and permanent disability shall upon the filing of a *proper application* with the board, be entitled to receive a disability pension if his disability is sustained in the actual per-

formance of duty regardless of his length of service or if his disability is incurred not in the performance of duty and provided he has at least eight years of credited service.

53 P.S. § 23587(c).

11. The initial appeal and cross appeal were filed with the Superior Court on September 17, 2004. Those appeals were transferred to this Court by order dated September 23, 2004.

12. A disability pension application is placed on the Board's agenda for the next regular meeting following receipt of the third physician's statement of disability.

leases funds one day a month, which is the last day of each calendar month. The Fund contends that it has a general grant of authority to establish the procedures for processing pension applications, and this includes the establishment of the pension's starting date. The Fund argues that deference should be given to its long-standing practices, policies and customs, which have been tailored to meet the practical realities of the Trust's operations.

The question before us involves the proper interpretation of a statute; as such, our review is plenary. *Commonwealth v. Gilmour Manufacturing Company*, 573 Pa. 143, 148, 822 A.2d 676, 679 (2003). Generally speaking, the best indication of legislative intent is the plain language of the statute, and "[e]very statute shall be construed, if possible, to give effect to all of its provisions," so that no provision is mere surplusage. 1 Pa.C.S. § 1921(a); *Gilmour Manufacturing*, 573 Pa. at 149, 822 A.2d at 679.

## SLIVO'S APPEAL

We consider, first, Slivo's contention that she was entitled to payment of disability pension benefits as of the first day of the month of her initial application, *i.e.*, March 1, 2000, under Section 10(a) of the Pension Act of 1975. It states:

> *Monthly payments* for immediate pensions *shall be payable beginning with* the first full calendar month following the month in which retirement occurs or the calendar *month in which application for pension is made*, whichever is later.

53 P.S. § 23590(a) ·(emphasis added).[13] Slivo argues that an "immediate" pension can be either a retirement or a disability pension, noting that the statute refers to an "application for pension," not an "application for a retirement pension." A close look at the Pension Act of 1975 belies Slivo's proffered construction of Section 10(a).

First, the Pension Act of 1975 repeatedly distinguishes between retirement and disability pensions. For example, Section 8, which addresses the calculation of pension benefits, specifies one methodology for retirement pensions and another for disability pensions.[14] This distinction is also seen in Section 7, which establishes

13. Section 10 in its entirety states as follows:
**Payment of benefits**
(a) Monthly payments for immediate pensions shall be payable beginning with the first full calendar month following the month in which retirement occurs or the calendar month in which application for pension is made, whichever is later.
(b) The first of any deferred vested pension shall be paid as follows:
(1) for pensions commencing after attainment of age 60, the later of: (i) the calendar month next following the member's 60th birthday, or (ii) the calendar month in which the application for such payment is made; or
(2) for pensions commencing prior to attainment of age 60, the later of: (i) the calendar month next following the member's 50th birthday, or (ii) the calendar month in which application for such pension is made.

(c) The last payment of any pension shall be payable for the month in which the death of the pensioner shall occur.
(d) A pension payable under this act shall cease when the pensioner returns to city employment. Pension payments shall be resumed upon subsequent discontinuance of service.
53 P.S. § 23590.

14. Retirement pension benefits are calculated as a percentage of the member's average monthly earnings multiplied by a ratio of the member's *years* of credited service. The amount of a disability pension is determined based upon the member's average *monthly* earnings at the date of disability using the false assumption that the disabled member is 60 years old and has completed the greater of his actual credited service or 20 years of service. 53 P.S. § 23588(a), (b), (c) and (d).

separate and distinct eligibility requirements for retirement and disability pensions.[15] Had the legislature intended to address payment of disability pension benefits in Section 10(a), it would have done so in the same clear and distinct language used in the rest of the statute. The maxim *expressio unius est exclusio alterius* teaches that where certain things are specified in a law, omissions should be understood as excluded. *Finkelstein v. Commonwealth,* 61 Pa.Cmwlth. 91, 433 A.2d 146, 148 (1981).

Second, an "immediate" pension is one of two types of a retirement pension. As noted, Section 8 of the Pension Act of 1975 addresses the calculation of pension benefits, by separating these into three types: "immediate" retirement, "deferred" retirement and "disability" pensions. 53 P.S. § 23588(b)(c) and (d).[16] Indeed, the concept of an "immediate disability pension" is at direct odds with the statute, which requires a six-month waiting period before a member can begin to collect a disability pension. Section 1 of the Pension Act of 1975, 53 P.S. § 23581.[17]

A straightforward reading of Section 10(a) leads to one conclusion: it does not apply to disability pensions. To the con-

---

**15.** Section 7 provides *inter alia:*
**Eligibility for benefits**
(a) Upon termination of service and the filing of the *proper application* with the board the following members shall be entitled to a pension:
(i) any members who on or after January 1, 1975, shall have had at least eight years of credited service as determined in section 6 and shall have attained age 60; and
(ii) employees who were members of the fund prior to January 1, 1975, and who have completed at least 25 years of credited service as determined in section 6 and shall have attained age 50.
(b) Upon termination of service on or after January 1, 1975, any member who has at least eight years of credited service and has attained age 50, shall, upon filing of the *proper application* with the board, be entitled to receive a deferred pension commencing upon attainment of age 60, or an early reduced pension.
(c) On or after January 1, 1975, any member who suffers a total and permanent disability shall upon the filing of a *proper application* with the board, be entitled to receive a disability pension if his disability is sustained in the actual performance of duty regardless of his length of service or if his disability is incurred not in the performance of duty and provided he has at least eight years of credited service.
\* \* \*
(d) On or after January 1, 1975, any member who terminates service after having attained age 40 with eight or more years of credited service who continues making contributions until attainment of age 50 as provided in section 4(a) shall be eligible to receive a pension.
(e) Any member upon attainment of age 50 who has complied with the provisions of section 6(d) and who files a *proper application* with the board shall be eligible to receive a pension.
53 P.S. § 23587 (emphasis added).

**16.** It states, in relevant part, as follows:
(b) The amount of any monthly pension of a member who terminates service prior to age 60 shall be either of the following as the member may elect at the time of termination of service:
(1) a *deferred* pension, commencing on attainment of age 60 ... or
(2) a reduced pension commencing prior to age 60, equal to a *deferred pension* to which the member would have been eligible had he so elected....

\* \* \*

(c) The amount of any monthly pension for a 25–year *retirement* ... shall be determined in accordance with subsection (a) and payable *immediately* upon retirement....
53 P.S. § 23588(b)-(c) (emphasis added). Disability pensions, addressed in Section 8(d) are calculated on the basis of monthly earning "at the date of disability." 53 P.S. § 23588(d).

**17.** See note 9, *supra,* for the text of Section 1.

trary, it addresses the inception of the immediate retirement pension. The starting date is either the month in which retirement occurs or the month in which the application is submitted, "whichever is later." It clarifies that if an application is submitted prior to retirement, payment will be delayed until retirement actually takes place. The comparative phrase "whatever is later" is illogical unless the two alternative starting dates are for the same type of pension, i.e., a retirement pension.[18] Notably, Section 10(b) addresses the starting date of the other type of retirement pension, i.e., the deferred pension.[19]

In sum, we agree with the trial court that Section 10(a) does not speak to disability pensions. Rather, it speaks to one of two kinds of retirement pensions, i.e., the immediate retirement pension. As such, it is irrelevant to the question of when payment of a disability pension begins.

■ Next, we consider Slivo's argument that the trial court erred in finding that a "proper application" for disability pension benefits must include statements of disability from three physicians. Slivo contends that the form she submitted to the Board on March 23, 2000, was proper, entitling her to payment of benefits as of March 1, 2000.

Initially, Slivo notes that "application" is commonly understood as "[t]he act of making a request for something." BLACK'S LAW DICTIONARY 98–99 (6th ed.1990). She contends that the determination to grant or deny a request should not be confused with the request, or application, itself. In support, she notes that the first sentence of Section 2(g) of the Pension Act of 1975 requires that "[e]ach application for a pension shall be made in writing to the board on a form provided by the board." 53 P.S. § 23582(g). The Board's application form does not state that the application is not complete until three supporting physician statements are presented.

■ The Fund counters that the Board has the statutory authority to set the rules for a "proper application." Section 2(g) provides "[t]he board may require any applicant for pension to furnish such reasonable information as may be necessary to process the application." 53 P.S. § 23582(g). Because eligibility precedes entitlement, the Fund contends that an application cannot be proper until it provides all information needed to determine eligibility. In the case of a disability pension, eligibility requires proof in the form of three sworn medical statements. This logic was followed by this Court in *Crisamore v. City of York*, 688 A.2d 1271 (Pa. Cmwlth.1997), and, the Fund argues, that case is controlling here. We agree.

In *Crisamore*, the city pension ordinance stated that in order for a police officer to receive a disability pension, he was required to submit two physician's statements attesting to the officer's disability. The officer contended that he was entitled to receive a disability pension on the day he became permanently disabled,

---

**18.** Disability pensions are, obviously, not tied to a retirement date. If the legislature had meant that an immediate pension includes a disability pension, Section 10(a) would have read as follow:

> (a) Monthly payments for immediate pensions shall be payable beginning with the first full calendar month following the month in which retirement *or disability occurs* or the calendar month in which application for pension is made, whichever is later.

We cannot, however, read words into a statutory provision.

**19.** The text of Section 10(a) and (b) is found in note 13, *supra*.

not when he proved it. We concluded otherwise. The officer was found eligible on the date the pension fund received the second physician's statement and not earlier.[20] Slivo's situation cannot be distinguished from that of the police officer in *Crisamore*. Slivo was not eligible until the Fund received the third confirmation of her disability, thereby completing a "proper" application.

We reject Slivo's contention that BLACK's LAW DICTIONARY compels a different result here than in *Crisamore*. Slivo may be correct that, as BLACK's teaches, an "application" is synonymous with "request." However, the legislature chose to modify "application" with the adjective "proper," and we are required to give meaning to all the words in a statute, lest a provision be rendered mere surplusage.[21] *Nelson v. State Board of Veterinary Medicine*, 863 A.2d 129, 135 (Pa.Cmwlth.2004); 1 Pa.C.S. § 1921(a) (holding that a statute "be construed, if possible, to give effect to all its provisions."). We hold, therefore, that an "application" for disability benefits is not "proper" unless and until three sworn physician statements attesting to a total and permanent disability have been submitted by the applicant.

## FUND'S APPEAL

Next, we turn to the Fund's cross-appeal. The Fund offers two reasons to support its contention that Slivo's disability benefits could not begin until after the Board met to review her application and vote on it.[22]

First, as noted, the Fund argues that it cannot pay Slivo until it receives the money from the Trust, which it does on the last day of each month. Further, the Trust will not release any funds until the Board has voted to award a pension. The Fund asserts that it lacks the ability to requisition monies from the Trust to pay a pension, of any type, before there is a vote by its Board.[23] Thus, the Fund argues, the first payment of any pension may take place only on the last day of the month in which the Board votes.

Second, the Fund asserts that paying Slivo's disability benefits as of March 8, 2001, could violate Section 10(d) of the Pension Act of 1975,[24] which prohibits simultaneous payment of a pension and a salary. It notes that some employees elect to delay implementation of their disability

---

20. The date of entitlement to the disability pension in *Crisamore* was significant because Section 4301 of The Third Class City Code, Act of June 3, 1931, P.L. 932, *as amended*, 53 P.S. § 39301, did not contain a provision for set-off or credit for receipt of workers' compensation benefits as of the date of the officer's disability, but the Code was amended to include such a provision prior to the submission of the second physician's statement attesting to his disability. *See* Section 4303.2, added by the Act of October 3, 1988, P.L. 735, 53 P.S. § 39303.2(d). The date of entitlement, therefore, determined whether the officer's disability pension benefits would be reduced by the amount of workers' compensation benefits he received.

21. Otherwise, this would mean that an application for a disability pension submitted with

no more information than the name of the applicant would satisfy the Pension Act of 1975.

22. Apparently, the Board met in April 2001 to consider all applications submitted in March, including that of Slivo.

23. The Fund does not explain whether this is a matter of contract with the Trust, which perhaps could be renegotiated, or a matter of statute.

24. It states:

A pension payable under this act shall cease when the pensioner returns to city employment. Pension payments shall be resumed upon subsequent discontinuance of service.

53 P.S. § 23590(d).

pension because employment status entitles them to other benefits such as short-term disability and workers compensation.

■ The Fund's objections are more practical than legal. With an earlier vote on disability pension applications, the Fund could obtain the monies from the Trust needed to pay disability pensions. The Fund offers no reasons why it had to wait until April to vote on Slivo's March application. The Fund's Section 10(d) argument is no more compelling. Because employees cannot qualify for a disability pension until they have been unable to work for six months, the chance of a double payment in violation of Section 10(d) seems unlikely. We agree, in any case, that payment of a disability pension cannot begin while an employee is still collecting a salary. Because the Fund controls the checkbook, however, it has the power to prevent this untoward double payment. Notably, this was not the case with Slivo.

Under Section 2(b)(4) of the Pension Act of 1975 the Fund must "grant such pensions and other payments as are herein provided, and to pay over by warrant or check such amounts." 53 P.S. § 23582(b)(4). It must do so in accordance with all of the provisions of the Pension Act of 1975. 1 Pa.C.S. § 1921(a). Because we have determined that Section 10(a) does not govern the payment of disability pensions, the only statutory provision relevant to the starting date of Slivo's pension is Section 7(c). It states that "any member who suffers a total and permanent disability *shall upon the filing of a proper application* with the board, be entitled to *receive a disability pension* . . .". 53 P.S. § 23587(c) (emphasis added). On March 8, 2001, Slivo filed the physician's statement attesting to her total and permanent disability, thereby completing her proper application. On that date, accordingly, Sli-vo became "entitled to receive" payment of her disability pension. The trial court did not err in fixing March 8, 2001, as the starting date of Slivo's disability pension benefits.

## CONCLUSION

For all these reasons, we affirm the decision of the trial court.

## ORDER

AND NOW, this 19th day of August, 2005, the order of the Court of Common Pleas of Allegheny County of August 5, 2004, as modified by order of September 13, 2004, entered in the above-captioned matter is hereby affirmed.

