Barbara MALETTA, Appellant

v.

**CITY OF BRADFORD and City of Bradford Firemen's Pension Fund.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 22, 2005.

Decided Aug. 24, 2005.

Stephen C. Richman, Philadelphia, for appellant.

Peter Molinaro, Jr., Pittsburgh, for appellees.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Barbara Maletta appeals from an order of the Court of Common Pleas of McKean County (trial court) that granted summary judgment in favor of the City of Bradford and the City of Bradford Firemen's Pension Fund (collectively, Bradford). In this case we consider whether Maletta, as the widow of a retired firefighter, is entitled a survivor's pension benefit that includes cost-of-living adjustments made to her husband's pension during his lifetime.

The facts are undisputed. Maletta is the widow of Dominic Maletta (Decedent), a retired firefighter for the City of Bradford. Decedent retired in 1977 and began receiving a monthly retirement pension. In 1989, pursuant to the Special Ad Hoc Municipal Police and Firefighter Postretirement Adjustment Act (Act 147), Decedent received a monthly increase in his retirement pension of $75.[1] On July 1,

---

1. Section 302(a)(3) of Act 147, Act of December 14, 1988, P.L. 1192, 53 P.S. § 896.302(a)(3) states as follows:

[A] municipal retirement system shall pay a retired … firefighter a special ad hoc municipal … firefighter postretirement adjustment under section 301, as follows:

\* \* \*

(3) The sum of $75 a month, if on January 1, 1989, the retiree has been retired at least ten years but less than 20 years.

2002, as a result of an amendment to Act 147, referred to by the parties as Act 64,[2] Decedent received another cost-of-living increase in the amount of $108.68 per month. Accordingly, at the time of his death in 2003, Decedent was receiving a monthly pension benefit in the amount of $740.80. After Decedent's death, Bradford advised Maletta that to calculate her survivor's pension benefit, the 2002 cost-of-living adjustment would be backed out of Decedent's pension, thereby fixing her monthly pension at $632.12. Maletta filed the present action to recover, retroactively and prospectively, the difference between her monthly benefit and the total monthly benefit Decedent was receiving at the time of his death. Maletta and Bradford each filed motions for summary judgment.

The trial court examined Act 147, the 2002 amendments set forth in Act 64 as well as this Court's decision in *Hutskow v. Washowich*, 156 Pa.Cmwlth. 655, 628 A.2d 1202 (1993), which addressed a similar claim by the widow of a police officer. The trial court concluded that the General Assembly intended for the 2002 cost-of-living adjustment to be payable only to the member firefighter and not to his or her surviving spouse. Accordingly, the trial court denied Maletta's motion for summary judgment and granted Bradford's cross motion. Maletta now appeals.[3]

**2.** Act of June 19, 2002, P.L. 434, 53 P.S. § 896.401.

**3.** The question before us involves the proper interpretation of a statute; as such, our review is plenary. *Commonwealth v. Gilmour Manufacturing Company*, 573 Pa. 143, 148, 822 A.2d 676, 679 (2003).

**4.** Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 39322(a). Section 4322 of The Third Class City Code prescribes formulas for the calculation of pension benefits and service increments payable to firefighters and their survivors.

**5.** It states:

Maletta contends that a spouse of a deceased firefighter is entitled to a pension benefit equal to the pension benefit received by the member during his or her lifetime. In support, Maletta cites to Section 4322(a) of The Third Class City Code,[4] which states, in relevant part, as follows:

> *Payments to surviving spouses* of members retired on pension or killed in the service on or after January 1, 1960, or who die in the service on or after January 1, 1968, *shall be the amount payable to the member. . . .*

53 P.S. § 39322(a) (emphasis added). Maletta asserts that the trial court's holding does not stand up to the dictates of Section 4322(a); that the court's analysis strays, improperly, from this Court's holding in *Hutskow*; and that its understanding of Act 64 is erroneous.

■ In considering the foregoing issues, we are guided by certain well-settled principles. The object of every statutory construction exercise is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a).[5] Further, where statutes relate to the same persons or things, they are *in pari materia* and to be construed together, if possible, as one statute. 1 Pa.C.S. § 1932.[6] Finally, as a general rule, pension statutes are to be

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
1 Pa.C.S. § 1921(a)

**6.** It states:

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.
(b) Statutes in pari materia shall be construed together, if possible, as one statute.
1 Pa.C.S. § 1932.

liberally construed in favor of the pensioner. *Hutskow,* 628 A.2d at 1207. We apply these principles to the two statutes applicable here. The first is Act 147, by which the General Assembly established and funded a cost-of-living adjustment to pensions of firefighters and police officers. The second is The Third Class City Code, which establishes the pension rights of firefighters, police officers and their survivors.

## Act 147

The Special Ad Hoc Municipal Police and Firefighter Postretirement Adjustment Act, or Act 147, adjusted certain pension benefits paid to retired police officers and firefighters and provided for their funding. Act 147 defined the "special adjustment" as "[a]n increase in or change in the amount of a retirement annuity, retirement benefit, service pension or disability pension benefit granted or effective after active employment ceases, as provided for on a one-time basis under this statute." Section 102 of Act 147, 53 P.S. § 896.103. Act 147 did not define, or in any way explicate, what was meant, specifically, by a "retirement benefit" or "service pension." That is to say, Act 147 did not state whether "retirement benefits" and "service pensions" included survivors' benefits. Eligibility for the special adjustment created by Act 147 was set forth in Section 301, which provided as follows:

**Entitlement to 1989 special ad hoc adjustment**

A municipal retirement system shall pay a retired police officer or firefighter a special ad hoc municipal police and fire-

fighter postretirement adjustment under this chapter if all of the following apply:

(1) The retiree has terminated active employment with the municipality as a police officer or firefighter.

(2) The retiree is receiving a *retirement annuity, retirement benefit, service pension* or *disability pension benefit* from a municipal retirement system on the basis of active employment with a municipality as a police officer or firefighter.

(3) The retiree began receiving the retirement annuity, retirement benefit, service pension or disability pension benefit before January 1, 1985.

53 P.S. § 896.301 (emphasis added).

In spite of the fact that Act 147 purported to establish a one-time cost-of-living adjustment, it was amended in 2002 to provide a second cost-of-living increase. In contrast to the flat monthly increases established in 1988, the 2002 amendment, *i.e.,* Act 64, established a more complex mechanism for calculating adjustments.[7] However, the amount of the 2002 adjustment is not relevant here; rather, it is Act 64's substantive amendments to Act 147 that concern us.

First, Act 64 amended Act 147 to define certain terms that had been absent from the original enactment. "Special ad hoc municipal police and firefighter postretirement adjustment," "special ad hoc adjustment" and "special ad hoc postretirement adjustment" were each defined as "[a]n increase in the amount of a *retirement benefit* as provided for under this act." Section 102 of Act 64, 53 P.S. § 896.102 (emphasis added).[8] The legislature also

---

**7.** Under Act 64, a base adjustment is established based on a retiree's years of service and the number of years that he has been retired. A longevity adjustment is then applied to the base adjustment to arrive at the final special ad hoc postretirement adjust-

ment. Section 402(a) of Act 64, 53 P.S. § 896.402(a).

**8.** The definition of "postretirement adjustment" remained the same in Act 64: "An increase in or change in the amount of a

defined "retirement benefit" for the first time as *"the amount paid* on a regular basis *to a retired* or disabled police officer or *firefighter* by a municipal retirement system established for police officers or firefighters." Section 102 of Act 64, 53 P.S. § 896.102 (emphasis added).

Second, Act 64 revised the eligibility requirements for the special adjustment. The four types of retirement benefits listed in Section 301(2) of Act 147 were reduced to one: "retirement benefit." Section 401 of Act 64 now reads as follows:

### Entitlement to 2002 special ad hoc postretirement adjustment

A municipal retirement system shall pay a retired police officer or firefighter a special ad hoc postretirement adjustment under this chapter if all of the following apply:

(1) The retiree has terminated active employment with the municipality as a police officer or firefighter.

(2) The retiree is receiving a *retirement benefit* from a municipal retirement system on the basis of active employment with the municipality as a police officer or firefighter.

(3) The retiree began receiving the retirement benefit before January 1, 1996.

53 P.S. § 896.401 (emphasis added).

The trial court held that the insertion of these definitions and the changes to the language of Section 301 were chosen to limit the scope of the 2002 special adjustment. Specifically, the court held that only retirees, not their spouses, were entitled to the cost-of-living adjustment.

### The Third Class City Code

The second statute we must examine is The Third Class City Code. It directs municipalities of the third class, such as the City of Bradford, to establish, by ordinance, a pension plan for firefighters, and it sets forth the requirements for operating and funding the plan.[9] Relevant here are the provisions establishing the terms of survivor benefits. Section 4320 of The Third Class City Code states that the pension fund *"shall* be applied ... for the benefit of such members of the fire department as shall receive honorable discharge therefrom by reason of service or age or disability, [and] *surviving spouses of retired members."* 53 P.S. § 39320 (emphasis added). The Third Class City Code is also explicit that the amount of the survivor's pension benefit *"shall be the amount payable to the member ...."* Section 4322(a) of The Third Class City Code, 53 P.S. § 39322(a)(emphasis added).

Under The Third Class City Code, the City of Bradford was required to establish a pension for its firefighters, who are honorably discharged, and their surviving spouses. Further, since 1960, a surviving spouse of a retired firefighter has been entitled to a pension in the same amount as that payable to the firefighter upon his death.

### Analysis

In making its determination, the trial court focused on the change in the language of Section 301(2) of Act 147 and in the definition of special ad hoc municipal police and firefighter postretirement adjustment. The court reasoned that the substitution of "retirement benefit" for "retirement annuity, retirement benefit,

---

retirement annuity, retirement benefit, service pension or disability pension benefit granted or effective after active employment ceases." Section 102 of Act 147, 53 P.S. § 896.102.

**9.** A third-class municipality may also provide annuity contracts in lieu of establishing a firefighter's pension fund. Section 4320 of The Third Class City Code, 53 P.S. § 39320.

service pension or disability pension benefit" evinced legislative intent to distinguish a "pension" from a "retirement benefit." The trial court reasoned that because Act 64 defines "retirement benefit" as "the amount paid on a regular basis to a *retired ... firefighter* by a municipal retirement system," with no provision for surviving spouses, Maletta was not entitled to the 2002 postretirement adjustment.

To be sure, the legislature modified certain key terms defined in Act 147, and added new ones.[10] However, the purpose of Act 147 has not changed. It prescribes cost-of-living adjustments for certain retired police officers and firefighters, and it defines which members of that class are entitled to the adjustment. When we consider this purpose, it is not surprising that, as the trial court observed, Act 147 is silent with respect to surviving spouses. Surviving spouses are not members of the class of people affected by Act 147. Stated otherwise, a survivor collecting pension benefits in 2002 may not have been an intended beneficiary of the 2002 adjustment. Here, however, Decedent, who was collecting retirement benefits in 2002, was an intended beneficiary of the cost-of-living adjustment enacted in Act 64.

Act 147 is not dispositive of this appeal. This Court considered a similar issue in *Hutskow v. Washowich,* 156 Pa.Cmwlth. 655, 628 A.2d 1202 (1993). In that case, Helen J. Hutskow, the widow of a retired police officer, sought a writ of mandamus directing the City of McKeesport to include in her survivor's pension benefit a portion of the 1989 Act 147 adjustment her husband had been receiving. Like Maletta, Hutskow argued that, pursuant to The Third Class City Code, her survivor's benefit was fixed at an amount certain based on the pension her husband "was receiving" at the time of his death. Section 4303(c) of The Third Class City Code, 53 P.S. § 39303(c).[11] This Court affirmed the decision of the trial court that the survivor's pension benefit payable to Hutskow must include the Act 147 adjustment that had inured to her husband. We reasoned that

> Both Act 147 and Section 4303(c) of The Third Class City Code discuss the same "thing"—the pension of the retired officer—and they must be construed together. The Act 147 adjustment is "an increase in ... the amount of a ... service pension" of a retired police officer. Section 4303(c) provides for the calculation of the surviving spouse's independent right to payment based on the "pension" of the deceased spouse. Because of Section 4303(c) there was no need for the legislature to specify that a surviving spouse is also entitled to re-

---

**10.** We disagree with the trial court's suggestion that a "special ad hoc postretirement adjustment" is distinct from a "postretirement adjustment" because the former applies only to "retirement benefits" while the latter applies to retirement annuities, retirement benefits, service pensions or disability pension benefits. It seems more likely, and logical, that a special ad hoc postretirement adjustment is but one type of postretirement adjustment. We doubt that the semantic differences observed by the trial court were by design. More than likely they represent inartful statutory drafting.

**11.** This amount was actually "fifty per centum of the pension the member was receiving ... at the time of his death," 53 P.S. § 39303(c), as opposed to the full amount granted to the survivors of firefighters under Section 4322(a). It is unclear why the legislature saw fit to treat survivors of police officers differently from survivors of firefighters. This anomaly is immaterial to our analysis, however, since both provisions tie a survivor's pension benefit to the amount the member was actually receiving at the time of death.

ceive a portion of the ad hoc pension increase, and construing the statutes together requires this result.

*Hutskow,* 628 A.2d at 1207.

Thus, as we made clear in *Hutskow,* Act 147 and The Third Class City Code must be read *in pari materia* insofar as they concern the same subject matter—the pension of a retired firefighter.[12] Act 147, as amended by Act 64, increased Decedent's monthly pension benefit by $108.68, resulting in a total monthly benefit of $740.80 at the time of his death. Section 4322(a) of The Third Class City Code states unequivocally that Maletta's survivor pension benefit *shall* be the amount payable to Decedent. If the legislature truly intended to divest Maletta of Decedent's vested cost-of-living adjustment being paid him when he died, then Section 4322(a) of The Third Class City Code should have been similarly amended. It was not. To so hold would require us to disregard the plain language of Section 4322(a) that spouses of retired firefighters are entitled to a survivor's pension in an amount equal to that paid to the deceased member at the time of death. This we will not do.

**Conclusion**

In sum, we hold that Maletta was entitled to the full amount of Decedent's monthly pension benefit, which included the Act 64 special ad hoc postretirement adjustment that was being paid to Decedent when he died. The trial court erred in concluding otherwise.

Accordingly, we reverse the order of the trial court and remand the matter for entry of judgment in favor of Maletta. Jurisdiction is relinquished.

**ORDER**

AND NOW, this 24th day of August, 2005, the order of the Court of Common Pleas of McKean County dated September 23, 2004, in the above-captioned matter is hereby reversed and remanded for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.

---

**12.** Contrary to the trial court's analysis, Act 64 in no way changed the interplay between the two statutes. As we indicated above, Act 147, in its original and amended form, determines which firefighters are eligible for postretirement adjustments. It does not address the rights of survivors; that is the province of The Third Class City Code.